No. 77.—ALLEN REEVES, administrator, &c. plaintiff in error, *vs.* ROMULUS W. MATTHEWS, defendant.

[1.] Where a plaintiff had brought actions against several defendants, for the recovery of certain negroes, the defendants having common cause of defence, and an agreement was entered into between the parties, that the several issues should be determined by one trial, and that such evidence was to be admitted on the trial of this case as would be admissible in either of the cases : *Held*, that by virtue of this agreement, a defendant in one of these cases, though not the immediate party to the case which was tried, was a competent witness.

[2.] An administrator is not, necessarily and as matter of right, entitled to recover property because his intestate died in possession of it.

[3.] An estoppel *in pais* results from acts or words, or both, which are intended to induce another to act in some matter touching his interest, on which he does act, and by which an advantage is gained by him who speaks or acts, or by which injury results to the other party. It is founded in fraud, or in gross negligence equivalent to fraud.

[4.] Admissions which do not amount to an estoppel as thus defined, may

yet be good testimony against the party making them, when regarded simply as evidence of title.

Trover, in Crawford Superior Court. Tried before Judge POWERS, September Term, 1854.

This was an action for negroes, brought by the administrator of William Reeves, against the defendant in error, who claimed them under the will of William Cleveland.

The mother of the negroes had formerly been the property of Cleveland, whose daughter William Reeves married, but had been in the possession of Reeves from 1827 until his death in 1850. William Cleveland, by a will dated in 1835 and proven in 1844, had bequeathed these negroes, after the death of William Reeves, to the children of his daughter, Milly Reeves, one of whom was wife of the defendant, to whom he bequeathed them for life. There was much conflicting evidence as to whether Reeves, in his life-time, claimed these negroes as his his own or not—some witnesses testifying that he did, and that he had offered to sell part of them at different times; and others testifying, that he admitted the title to be in Cleveland; and that he had only a life estate; and that he knew the contents of Cleveland's will and had given it his sanction, and claimed title under it.

This case was one of several, brought by the same plaintiff, against the different sons and sons-in-law of Mrs. Milly Reeves, involving the same questions; and it was agreed that this one should be tried, and that the issue of it should control the others, and that such evidence be admitted on the trial of the one case, as would be admissible in either of them.

Upon the trial, James M. Reeves, one of the defendants in the cases in question, was offered as a witness for the defendant, and objected to on the ground of interest, which objection was over-ruled by the Court and his testimony received, and this is assigned as error.

The plaintiff's Counsel requested the Court to charge the Jury—

1st. That if William Reeves died in possession of the ne-

groes sued for, then his administrator is entitled to recover them.

2d. That if Wm. Reeves yielded the negroes back to Cleveland, without consideration, it is a *nude pact*, and cannot be enforced.

3d. That although Wm. Reeves may have admitted that the property was to go to the children of Milly Reeves after his death, yet, if the Jury believed that the negroes were given to Milly Reeves in her life-time, they vested in her husband, Wm. Reeves; and any promise without consideration, by him, is void.

Which charges the Court refused to give, but charged the Jury, that if William Reeves admitted that the title to the negroes was in Cleveland; and, after Cleveland's death, admitted that he held the negroes under his will, that such admissions, if unexplained, bound him and bound his representative. The Court charged likewise, that if such admissions were made by Wm. Reeves, either in express words or by his general conduct, to the executor of Cleveland or to either of the defendants, although they may not have been acted on by the defendants or the executor, yet, Wm. Reeves and his representative is estopped thereby, and will not be allowed to claim the property against such admissions.

Which charges and refusals to charge, are assigned as error.

W. & W. C. POE, for plaintiff in error.

CULVERHOUSE, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The point first made in this case, viz: that upon the admissibility of James Reeves' testimony, is controlled by the agreement entered into between the parties, (which is set forth in the statement of facts accompanying this case,) to the effect that such evidence was to be admitted on the trial of one case as would be admissible in either of them—a stipulation which

seems to have been adopted for the exclusive purpose of obviating just such an objection as that made here.

[2.] The Court was right in refusing to charge, that if William Reeves died in possession of the negroes sued for, then his administrator is entitled to recover. This point was settled by this Court in the case of *Yeldell vs. Shinholster*, (15 *Ga.* 189); and for the reasons which influenced that decision, we refer to that case.

[3.] The other points submitted make necessary a slight consideration of the nature and character of an estoppel *in pais.* We need not pause to discuss the difference between such an estoppel and a technical estoppel. Suffice it to say, that this kind of an estoppel results from acts or words, or both, which are intended to induce another to act in some matter touching his interest, on which he does act, and by which an advantage is gained by him who speaks or acts, or by which injury results to the other party. That is to say, one person, by his admissions or conduct, shall not be allowed to influence another, with whom he is dealing, and lead him into a line of conduct prejudicial to his interest, unless the party estopped be cut off from the power of retraction.

In all cases " where an act is done or a statement made by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair, there the character of an estoppel shall be given to what would otherwise be mere matter of evidence, and it will therefore become binding upon a Jury even in the presence of proof of a contrary nature." (*Stephens vs. Baird*, (9 *Cow.* 274.) *Welland Co. vs. Hathaway*, (8 *Wend.* 483.)

Of course, admissions which are made in good faith or by mistake, not the result of gross negligence, do not fall within such definition, for this sort of estoppel (being adopted by the Courts of Law from the Courts of Equity) must be founded in fraud or in gross negligence amounting to fraud. (1 *Story Eq.* §§286, 391.) *Brewer vs. Bos. & W. R. R. Co.* (5 *Met.* 483.)

Let us try the point in question by this rule. How were these defendants injured by these admissions of William Reeves,

supposing them to have been made, and supposing that they influenced the distribution of the property? They were put to no expense by such distribution, and have lost no rights by it, and have been rather benefited than injured by the same.

Though there is no issue here between the executor and the plaintiff in error, yet we may remark, that the former is not injured. He has discharged his duty, or what he supposed his duty, and cannot be liable for this distribution, should the question ever be made with him.

Having ascertained this, let us look to the charge, which was, that "if the Jury believed,.from the evidence, that William Reeves admitted, either expressly or by his general conduct to the defendants, or either of them, that the property in dispute was held by him for life under the will of Cleveland, and at his death belonged to defendants, and confiding on these admissions, *acted upon the same in any way*, then the admissions are conclusive on the plaintiff, and defendants must recover."

Now, if we apply the principles which we have just understood governs in such cases, we find this instruction deficient, because the Court tells the Jury that the admissions are conclusive, &c. if the defendants *acted upon them in any way*. The rule declares that the party must *so act* that an advantage will be gained of him, or an injury result to him, unless the other is estopped, &c. But the Court says, he shall be estopped, if he act on the admissions in any way. This is plainly too loose, and was of a character which might mislead the Jury. If the record had shown any such action on the part of the defendants, as marriage of the daughters for example, having such property in possession; or if it had appeared that by reason of such admissions, a daughter had claimed such property, and this was generally known, and so claiming it she married, these things would illustrate the rule.

Reference was made in the charge to admissions made by Reeves before the death of William Cleveland, and it was argued that the latter may have acted upon them, and have made a disposition in favor of his grand-children, other than he would

have made. This should have been shown, if any thing like this were true. And in the absence of testimony going to show that such admissions ever came to the knowledge of William Cleveland, and influenced him in any manner, nothing is proven amounting, as we have seen, to an estoppel *in pais.*

The charge of Court, as to the effect of these admissions, considered simply as testimony, was correct.

[4.] The point made upon the refusal to charge as requested in the second request of Counsel for the plaintiff in error was, that if William Reeves derived title from Cleveland to the woman Esther, a bare promise, without consideration, as to what disposition should be made of her after the death of his wife, was void.

The doctrine thus contended for is correct enough in *itself*; but we are not sure, so far as it has reference to a promise, that it would have been authorized by the facts. So far as it relates to admissions made by Reeves against himself, going to show the character of his title to this slave and her increase, they may be looked to as evidence of such title; or if such were made and acted on *in the way we have pointed out*, they may amount to an estoppel.

Let the judgment be reversed.