## 20471. DIDSCHUNEIT *v.* ENOCHS LUMBER & MANUFACTURING COMPANY.

DECIDED JANUARY 19, 1931.

528

*Lawton Nalley,* for plaintiffs in error.

*Spalding, MacDougald & Sibley, Sumter M. Kelly,* contra.

BELL, J. (After stating the foregoing facts.) The record discloses no valid assignment of the account sued on. While it was agreed among all parties that Bayley & Company might pay to the plaintiff the amount that Bayley & Company owed to the defendants, and charge the same to the account of the latter, there is nothing to indicate any intention on the part of the plaintiff to assign or transfer the account to Bayley & Company; nor does it appear that Bayley & Company had any sort of intention to purchase the indebtedness. Any language, however informal, will be sufficient to constitute a legal assignment, if it shows the intention of the

owner of the right or chose to transfer it instantly so that it will become the property of the transferee, but it is further true, however, that "An instrument, other than a draft, purporting to assign a sum of money to be paid out of a fund claimed to be in the hands of another, without describing the identical money intended to be conveyed, will not of itself convey legal title to any part of the fund which in fact may be in the hands of such other person." *W. & A. R. Co.* v. *Union Investment Co.,* 128 *Ga.* 74 (57 S. E. 100). Measured by this rule, the letters did not operate to convey legal title to the account in controversy, and therefore did not constitute a legal assignment.

Nor was there an equitable assignment. In *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50), the Supreme Court said: "In order to infer an equitable assignment, such facts and circumstances must appear as would not only raise an equity between the assignor and the assignee, but show that the parties contemplated an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment."

2. Moreover, even assuming that the letters written by the plaintiff to Bayley & Company contained language which might have been sufficient to constitute an assignment if supported by a consideration, none of the writings gave any evidence of this essential element of a valid transfer, as to which the defendants had the burden of proof. *Brown Guano Co.* v. *Bridges,* 34 *Ga. App.* 652 (2) (130 S. E. 695). If the letters from Bayley & Company may be said to contain a promise to pay the debt (and as appears from the evidence this is the only possible semblance of a consideration), such promise was in relation to a pre-existing debt for which Bayley & Company was not theretofore bound, and was thus a nude pact and not binding. "A promise to answer for the debt, default, or miscarriage of another, in order to be binding, must be in writing (Civil Code of 1910, § 3222, par. 2), and be supported by a consideration; it is nudum pactum unless some benefit accrues to the debtor or to the promisor." *Wright* v. *Threatt,* 146 *Ga.* 778, 781 (92 S. E. 640, L. R. A. 1918C, 541) ; *Davis* v. *Tift,* 70 *Ga.* 52 (2), 56. A naked and void promise by Bayley & Company would afford no consideration for an assignment by the lumber company, and,

therefore, any purported transfer or assignment by the latter company was itself void and unenforceable.

A release of the defendants as the original debtors would have been a sufficient consideration for a promise by Bayley & Company, if made, and would have given to that promise such efficacy and force as to have made it a valuable and sufficient consideration for an assignment by the plaintiff. But the only reasonable inference from the evidence is that until the debt was paid by Bayley & Company the status of each party was unchanged. See, in this connection, *Brooks* v. *Key, 34 Ga. App.* 387 (129 S. E. 913).

3. It is suggested by counsel for the plaintiff in error that there was a substitution of debtors, and that this would operate to release the defendants and to fix the responsibility upon Bayley & Company, with a right of action in the plaintiff against no other. Whether the pleadings would have authorized a judgment in favor of the defendants upon this theory, we can not sustain the contention of counsel regarding it. As just indicated, the evidence discloses no intention to extinguish the debt as to the original debtor, and unless this was done, there was no substitution and Bayley & Company were not bound. Compare *Palmetto Mfg. Co.* v. *Parker, 123 Ga.* 798 (2) (51 S. E. 714); *Sapp* v. *Faircloth, 70 Ga.* 790; *Anderson* v. *Whitehead, 55 Ga.* 277; *Dever* v. *Akin, 40 Ga.* 423; *Foote* v. *Reece, 17 Ga. App.* 799 (2) (88 S. E. 689); *Few* v. *Hilsman, 18 Ga. App.* 207 (89 S. E. 79); *Scott* v. *Ward, 22 Ga. App.* 680 (97 S. E. 207), and cit.

The letters show that the plaintiff merely requested Bayley & Company to deduct the amount of the plaintiff's account from any balance that might be due by Bayley & Company to the defendants "before making final settlement with them;" that the defendants, upon being apprised of this request of the plaintiff, agreed that Bayley & Company might comply with it "at the proper time;" and that none of the parties intended such a disposition of the matter on the part of Bayley & Company except as *a mere matter of accommodation,* and at such time in the future as a settlement would be in order to be made between that company and the defendants. See, in this connection, *Fouché* v. *Morris, 112 Ga.* 143 (37 S. E. 182); *Long* v. *Scanlon, 105 Ga.* 424 (2) (31 S. E. 436); 46 C. J. 581.

4. Under the evidence adduced, the defendants were not entitled

to recover more on their cross-action than was allowed by the court as a credit against the plaintiff's demand. As indicated in the above statement, the only evidence introduced upon this issue was the testimony of one of the defendants, from which it appears that the amount of the damage sustained by the defendants as a result of the plaintiff's breach of contract did not exceed the sum of $80. The witness in one part of his testimony stated "that he had adjusted the bill and got it down to $120," but he later testified that $80 would cover the proportionate part of the expense that he was put to, and the rule is applicable that "the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal." *Shepard* v. *Chappell, 29 Ga. App.* 6 (2) (113 S. E. 23).

The superior court did not err in overruling the certiorari.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*